In the Matter of the Application of GEORGE WALTERS, Petitioner, to Restrain a Body or Officer Exercising Judicial or Quasi-Judicial Function from Proceeding without or in Excess of Jurisdiction, against LEWIS J. VALENTINE, Police Commissioner of the City of New York, Respondent.

In the Matter of the Application of THOMAS BRESS and SAMUEL BRESS, Petitioners, in Behalf of Themselves and All Other Persons Similarly Situated, for an Order to Compel the Performance of Certain Acts, against LEWIS J. VALENTINE, as the Police Commissioner of the City of New York, Respondent.

Supreme Court, New York County, April 26, 1939.

*Nathan Epstein*, for the petitioner in the first proceeding.

*Thomas Bress*, for the petitioners in the second proceeding.

*William C. Chanler*, Corporation Counsel [*Charles C. Weinstein* of counsel], for the respondent.

McCOOK, J. Under the head of traffic regulations the city proposes at one stroke to deprive of employment a large number of persons — the so-called sandwich men of New York streets — and to wipe out a long-standing form of cheap advertising. The arguments and briefs give as the two chief reasons the relief of congestion (though no distinction is made between sidewalks because of width

or location) and the removal of what is said to be an unsightly feature of city life, with a special view to the approaching World's Fair opening. Two businessmen and one of the individual sandwich men immediately affected, speaking for themselves and others, seek to enjoin as unreasonable and unconstitutional the execution of a rule promulgated by the police commissioner, which, if here sustained, will have the force of an ordinance, being section 110 of the Traffic Code of the City of New York. It reads as follows: " No person shall obstruct, hinder or interfere with pedestrian or vehicular traffic on any sidewalk or street by any unlawful use of such sidewalk or street. The display upon the person or the carrying of any advertising sign, placard, poster or similar device on the person or on any vehicle, except as permitted by Section 79 hereof while using such sidewalk or street is hereby declared to be an unlawful use of such sidewalk or street. Persons who are exercising a lawful right to picket are exempt from the application of this section. This regulation shall take effect immediately."

Such an exercise of the police power (in a technical, not the popular sense) rests on the right and duty of government to provide, among other things, for the safety and convenience of the public. Since, under our American conception, the greatest good of the greatest number prevails, the creation of hardship and suffering is not a fatal objection and does not in itself supply a bar. Ordinarily, the authorities need only state the existence of a reasonable necessity. To support an injunction as asked here the petitioners must prove bad faith or the absence of the asserted need, and bad faith is not claimed.

One of the commonest tests of reasonableness is fairness. No self-respecting people will permit the use of such · procedure unequally. On its face the rule discriminates by expressly excepting " pickets." What is a picket? Perhaps the suggestion that any question exists may be regarded as frivolous, but it is not. To the readers of " All Quiet Along the Potomac," generations ago, the word meant something very definite. The corporation counsel seems now to say that those who disseminate information in regard to labor disputes, political and religious issues, are pickets, although on the argument he confined himself to labor disputes. Last autumn the expression was used in this court by a group of persons who claimed the right to fight out the Spanish civil war in the doorway of a midtown shop.

The excepting clause does not say who a picket is, nor whether he must, in order to be recognized as such, be a member of a union, or whether he is exempt, though only in fact an unskilled laborer like the plaintiff now asking this court for relief. Suppose the rule

in question is to become effective. Some of these very plaintiffs, now silently proclaiming, let us say, the skill and fairness of the X company at some address on Union Square to its transient customers who have clothes to mend, may then be plodding back and forth in front of the City Hall with changed signs claiming that the city fathers are unfair and unskillful. Will they then, under this rule, be arrested as sandwichers or encouraged as pickets?

The respondent says the distinction is between commercial and other advertising. If, however, in the center of each sandwich is a low-wage day worker, where is the line to be drawn as matter of law or as matter of sense? Could the members of a union extend to cheap labor employed for picketing the exemptions granted to the union as the sole favored group?

The court's question on the argument, why annoyance to pedestrians and blocking of pedestrian traffic cannot be equally well prevented by limiting the size, shape, style and construction of signs for picketer and sandwicher alike, has not yet been answered. Nor have the city's representatives so far explained the difference, from the esthetic viewpoint, between pedestrian signs and vehicular signs excepted by section 79.

Apart from the grounds of unsightliness and congestion, nothing is left to justify such a measure as this. It is said to be the suggestion of business men who can afford a more expensive form of advertising. Certainly, no one claims that organized labor asked for or desires it. Were it not for the fancied necessity of wiping out this small group and getting rid of cheap advertising in competition with expensive advertising, the question of discrimination between sandwichers and pickets would not have arisen. Peaceful picketing in labor disputes has long been held lawful, but that is no excuse for inequality among similar groups by encouraging a nuisance in one and forbidding it in others. The necessity simply does not appear.

My view of the controversy makes unnecessary further elaboration of the practical problem or the consideration of cases. If the authorities of the city of New York still believe it is reasonably necessary to destroy a self-supporting economic unit, no matter how small, and force its human elements to ask relief, they should do so through a regulation clear and precise in form, and in substance reasonable, fair and just.

Applications granted. Settle orders.